UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TRIPLE CROWN SERVICES COMPANY, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Cause No.: 1:05-CV-320 |
| THE INSURANCE COMPANY ) OF THE STATE OF PENNSYLVANIA, ) ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION AND ORDER**

This matter is before the court on the Motion for Partial Summary Judgment[1] filed by the Plaintiff, Triple Crown Services Company ("Triple Crown" or "Plaintiff") on December 22, 2005.  The Defendant, The Insurance Company of the State of Pennsylvania ("Insurance of Pennsylvania" or "Defendant"), filed a response in opposition to the motion on June 26, 2006,[2] and Triple Crown filed a reply on July 10, 2006.  Also before the court is a Motion to Strike filed by Insurance of Pennsylvania on August 2, 2006, to which Triple Crown filed a response on August 3, 2006.  Insurance of Pennsylvania did not file a reply to that response.  For the reasons discussed in this Order, the motion for partial summary judgment is GRANTED and the motion to strike is deemed MOOT.

---

[1] Triple Crown's Complaint asserts two counts.  The first is a breach of insurance contract count, upon which Triple Crown now seeks summary judgment.  The second, an insurance bad faith claim, is not subject to the present motion.

[2] The unusually long period of time between the filing of the motion and Defendant's response was the result of the filing of two motions for extension of time filed by Defendant, both of which were granted by the court.

**BACKGROUND**

Triple Crown initiated this litigation by filing a Complaint for Breach of Contract and for Bad Faith on September 8, 2005.  Docket at 1.  According to the Complaint and Answer thereto (Docket at 18) Triple Crown, a Delaware general partnership with its principal place of business in Fort Wayne, Indiana, is engaged in the commercial trucking business.  Insurance of Pennsylvania is an insurance company incorporated in Pennsylvania and its principal place of business is located in New York, New York.  Insurance of Pennsylvania issued a commercial umbrella insurance policy to Triple Crown, with limits of $4,000,000.00.  That insurance policy was in effect from April 1, 2000 to April 1, 2001.  During this same time period, Triple Crown also had primary commercial insurance coverage through Travelers Property Casualty.  Specifically, Triple Crown had two separate insurance policies through Travelers.  One was issued by Travelers Insurance of Illinois and the second by Travelers Insurance of Connecticut.

On January 4, 2001, Johnnie Wilson, an owner/operator who leased a tractor to Triple Crown, was involved in a motor vehicle accident in Michigan.  That accident resulted in what Triple Crown deemed "significant personal injuries" to James Navarro.  Complaint, p. 2.  Mr. Navarro's wife, in her capacity as her husband's guardian, sued Wilson and Triple Crown in Michigan State court.  That lawsuit was eventually settled, with settlement contributions made by Travelers, Triple Crown itself, and the umbrella policy issued by Insurance of Pennsylvania.  However, before Insurance of Pennsylvania contributed money to that settlement, it "required Triple Crown to pay $500,000 to National Union Fire Insurance Company of Pittsburgh, Pennsylvania, an affiliate of [Insurance of Pennsylvania] in the American International Group ('AIG'), while indicating that Triple Crown could seek recovery of this amount through

2

litigation with [Insurance of Pennsylvania]." Complaint, p. 3. According to Triple Crown, Travelers paid the sum of $1,000,000.00 in the settlement of the Navarro case, while Insurance of Pennsylvania "paid the remaining portion of the settlement amount . . . utilizing the $500,000 which [it] had required Triple Crown to pay to [its] AIG affiliate to fund a portion of [its] payment." *Id.* Triple Crown alleges that the underlying limits of coverage under the Travelers policies was a combined $1,000,000.00. Accordingly, argues Triple Crown, Insurance of Pennsylvania was required to pay all sums in excess of that amount in the Navarro case. *Id.*, p. 4. Triple Crown says that the refusal of Insurance of Pennsylvania "to pay the first $500,000 in excess of the Travelers Policy's . . . limit" and its requirement that "Triple Crown itself . . . pay said $500,000 . . ." constituted a breach of the insurance policy terms. *Id.* Triple Crown also claims that this alleged breach constitutes bad faith. *Id.*, pp. 5-6.

Insurance of Pennsylvania, on the other hand, denies that it breached the insurance policy and has asserted a counterclaim for declaratory judgment and damages against Triple Crown. Answer and Counterclaim, Docket at 18. Insurance of Pennsylvania contends that the underlying insurance policy limits applicable to the Navarro case (that is, the Travelers policies) total a combined $2,000,000.00 and, therefore, the umbrella coverage provided by its own policy with Triple Crown applied only to any amounts in excess of $2,000,000.00, not $1,000,000.00. Insurance of Pennsylvania claims that neither it nor AIG "refused to settle the Navarro action." The Insurance Company of the State of Pennsylvania's Response to Triple Crown Services Company's Motion for Partial Summary Judgment ("Defendant's Response"), Docket at 46, p. 3. Rather, Defendant argues, it simply "refused to waive or abandon [its] coverage position based upon the language of the policies at issue." *Id.* In short, the parties dispute the interpretation of

3

the language contained in the various insurance policies involved and at what point that language triggers coverage under the umbrella policy issued by Defendant to Plaintiff.  It is this dispute that is the crux of this case.

By way of the present motion, Triple Crown seeks summary judgment in its favor on Count One of its Complaint (the breach of contract claim) and on the counterclaim filed by Insurance of Pennsylvania (the request for declaratory relief and damages asserted by the Defendant).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim.  *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990).  Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552-53 (1986).  The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986).  A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the

4

plaintiff." *Id.* at 2512; *In Re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir. 1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir. 1988); *Valentine v. Joliet Township High School District No. 204*, 802 F.2d 981, 986 (7th Cir. 1986).  No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553.  The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment.  *Goka v. Bobbitt*, 862 F.2d 646, 649 (7th Cir. 1988); *Guenin v. Sendra Corp.*, 700 F. Supp. 973, 974 (N.D. Ind. 1988); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960 (1983).

In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses.  *Anderson*, 477 U.S. at 249-251, 106 S. Ct. at 2511.  However, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate.  *Mason v. Continental Illinois Nat'l Bank*, 704 F.2d 361, 367 (7th Cir.

1983).

**DISCUSSION**

**1. Motion for Partial Summary Judgment.**

The insurance policy language at issue in this case includes language in both of the Travelers policies as well as the umbrella policy issued by Insurance of Pennsylvania. The three policies at issue in this case are: 1) the "Travelers All Other States Policy"; 2) the "Travelers Texas Policy"; and 3) the umbrella policy issued by the Defendant (hereinafter referred to as "the Pennsylvania Policy" or "the umbrella policy").[3]

As stated above, the issue before the court is which of these three insurance policies provides coverage for the damages resulting from the accident that injured Mr. Navarro. More specifically, the issue in the present motion for partial summary judgment is whether coverage under the Pennsylvania Policy applies to damages in excess of $1,000,000.00 or only to damages in excess of $2,000,000.00.

As to what coverage is provided by the Travelers All Other States Policy while other insurance policies are in effect simultaneously, that policy states as follows:

> If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident," the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or

---

[3] Triple Crown refers to the two Travelers insurance policies as the "All Other States Policy" and the "Texas Policy." Insurance of Pennsylvania refers to the first as the "TIL" policy (since it was issued by Travelers Insurance of Illinois), and the second as the "TCT" policy (since it was issued by Travelers Insurance of Connecticut). In fact, for reasons that will become clear later in this Order, Insurance of Pennsylvania takes issue with Triple Crown's designation of one of the policies as the "Texas Policy." Nonetheless, for ease of reference and to make the distinction clear, the court will adopt Triple Crown's method of referring to the two separate policies.

>policy.  This condition does not apply to any Coverage Form or policy issued by
>us or an affiliated company specifically to apply as excess insurance over this
>Coverage Form.

Appendix to Memorandum in Support of Motion for Partial Summary Judgment ("Plaintiff's Appendix"), Docket at 23, Exhibit–the Travelers All Other States Policy, p. 7.[4]  The Travelers Texas Policy contains an identical clause.[5]  It is undisputed that the coverage limit under each Travelers policy was $1,000,000.00.  Therefore, Triple Crown argues, "the limit of applicable insurance would . . . be $1 million in total (the highest applicable limit under either of the policies), even if both Travelers policies could be argued to apply to the Navarro claim."  Memorandum in Support, Docket at 22, p. 7.  Consequently, Triple Crown argues that Insurance of Pennsylvania was and is liable for any amount of damages paid on the Navarro claim which exceeded one million dollars.  Triple Crown also argues that only the Travelers All Other States policy applied to the Navarro claim in any event, since the Travelers Texas Policy applied only within the State of Texas.  *Id*., pp. 5-6.  Since the Navarro accident occurred in Michigan, and since the facts surrounding the accident do not give rise to any connection to Texas (for example, none of the persons involved were residents of Texas), the Travelers Texas Policy is inapplicable and only the $1,000,000.00 in coverage afforded under the Travelers All Other States Policy would apply.  *Id.*  Thus, either way, according to Triple Crown, the total amount of underlying coverage was one million dollars, and Insurance of Pennsylvania should pay all amounts over and above that sum.

---

[4] The page numbers referred to in this Order are the page numbers assigned to pleadings and exhibits by the court's electronic docketing system and may or may not coincide to page numbers originally placed on those documents by the parties.

[5] This clause is designated as "§V.B.8." in both Travelers policies.

In further support of its position, Triple Crown argues that the Insurance of Pennsylvania umbrella policy itself contains language that establishes that the underlying coverage limit was only $1,000,000.00. Triple Crown points to the Schedule of Underlying Insurance contained in the umbrella policy. *Id*., p. 5. According to Triple Crown, Insurance of Pennsylvania's own Schedule "explicitly shows that the Travelers Texas Policy was applicable in Texas, and that the Travelers All Other States Policy was applicable in states outside of Texas[.]" *Id*., pp. 5-6. In that Schedule, both Travelers policies are indeed listed–one is designated "(TEXAS)" while the other is designated "(ALL OTHER STATES)." See Complaint, Docket at 1, Exhibit A (umbrella policy), p. 2. According to Triple Crown, "[t]he . . . wording clearly shows that the only underlying policy [applicable] to the Navarro claim was the Travelers All Other States Policy[.]" Memorandum in Support, p. 6.

Insurance of Pennsylvania argues that the $4,000,000.00 of excess coverage provided by its umbrella policy was "in excess of the [Texas] policy *and* the [All Other States] policy, as well as any other underlying insurance providing coverage to [Triple Crown]." Defendant's Response, pp. 1-2 (italics added).[6] Insurance of Pennsylvania argues that the mere fact that one Travelers policy is designated as "Texas" does not, in fact, mean that the insurance coverage afforded under that policy is geographically limited to accidents that occur within the State of Texas. *Id*., p. 2. According to the Defendant, "the coverage territory identified in the [Texas] policy includes the United States of America and contains no indication that the policy is limited geographically." *Id*. It is the Defendant's position that the designations "Texas" and "All Other

---

[6] There are several insurance policies listed in the Schedule of Underlying Insurance. However, the parties do not dispute that only the two Travelers policies are at issue in this case.

8

States" are merely terms used to identify and/or differentiate the two Travelers policies, and not terms intended to limit either policy as to geographic scope or applicability.

Insurance of Pennsylvania also maintains that Triple Crown's argument that the "§V.B.8." clauses in each of the Travelers policies, limiting the underlying coverage to only one of them, is void or should be deemed void. According to Insurance of Pennsylvania, "[w]hile both policies do contain this provision, both policies also contain, because of the nature of the interstate business engage in by Triple Crown . . . what is commonly referred to as the MCS-90 Endorsement. This endorsement negates provisions in an insurance policy which purport to limit coverage. Since the 'Two or More Coverage Forms or Policies Issued by Us' provision operates to limit coverage, as argued by Plaintiff, the MCS-90 Endorsement should apply to negate the effect of that provision." *Id*., p. 2.[7]

Either way, then, according to Insurance of Pennsylvania, the underlying coverage with respect to the Navarro claim totaled $2,000,000.00, not $1,000,000.00. That is, *both* Travelers policies provided coverage that applied to that claim.[8]

As to whether one or both of the Travelers policies applies to the Navarro claim, the language of the policies makes it clear that only one–the All Other States Policy–provides primary coverage. Under Indiana law (which the parties do not dispute is applicable to this

---

[7] As will be discussed in detail below, the MCS-90 Endorsement is a federal provision required to be included in insurance policies providing liability coverage to companies engaged in interstate trucking.

[8] It is undisputed that the total settlement amount paid in the Navarro case was $4,000,000.00. Of that, Triple Crown and Insurance of Pennsylvania paid $1,000,000.00 collectively (i.e., $500,000.00 advanced by each pending the outcome of this litigation), Travelers paid $1,000,000.00, and Insurance of Pennsylvania paid $2,000,000.00. See Defendant's Response, p. 4 and Defendant's Response, Attachment 2, Affidavit of Robert Muir.

9

case), insurance policies, like any other contracts, are to be interpreted according to their plain and express terms. Whenever possible, a court should interpret an insurance policy according to its plain terms. *Auto-Owners Insurance Company v. Harvey*, 842 N.E.2d 1279, 1283 (Ind. 2006). If an insurance contract, or a portion thereof, is ambiguous, "the contract is construed strictly against the insurer, and the language of the policy is viewed from the insured's perspective." *Id.* (citing *Bosecker v. Westfield Ins. Co.*, 724 N.E.2d 241, 244 (Ind. 2000)). See also, *Indiana Farmers Mut. Ins. Co. v. Imel*, 817 N.E.2d 299, 302 (Ind.App. 2004). "[I]f a contract is clear and unambiguous, the language must be given its plain meaning. . . . On the other hand, where there is an ambiguity, insurance policies are to be construed strictly against the insurer and the policy language is to be viewed from the standpoint of the insured.." *Indiana Farmers*, 817 N.E.2d at 302. A policy is ambiguous if it is susceptible "to more than one interpretation and reasonable persons would differ as to its meaning." *Bosecker*, 724 N.E.2d at 244. In the present case, neither party expressly argues that the insurance policies at issue are ambiguous, nor does either party ask the court to consider any extrinsic evidence in interpreting that language. Still, they do present very different interpretations of certain language in those policies. Often, of course, the line between "ambiguity" on the one hand and differing opinions as to "plain meaning" on the other is blurred. In the present case, the language contained in the various policies, especially the two Travelers policies, makes the resolution of the issues before the court clear. Even if the distinct interpretations presented by the parties in this case arguably could be said to be a debate over ambiguities (although again, they do not profess that this is so), viewing the language of the various policies from the insured's perspective leads to the same result.

10

It is true, as Triple Crown points out, that one of the Travelers policies is referred to as a "Texas" policy while the other is referred to as an "All Other States" policy. It is also true, as Insurance of Pennsylvania points out, that the so-called Texas Policy contains language indicating that the coverage area under that policy includes the "United States of America." Insurance of Pennsylvania quotes the express language of the Texas Policy, which provides as follows:

> Under this Coverage Form, we cover accidents and losses occurring:
> a. During the policy period shown in the Declarations; and
> b. Within the coverage territory.
> *The coverage territory is:*
> a. The United States of America;
> b. The territories and possessions of the United States of America;
> c. Puerto Rico; and
> d. Canada.
> We also cover loss to, or accidents involving, a covered auto while being transported between any of these places.

Defendant's Response, p. 5 (citing to and quoting from Plaintiff's Exhibit B2-27 (the Texas Policy)) (italics added). Thus, argues Insurance of Pennsylvania, the fact that this policy is referred to or designated as a "Texas Policy" is irrelevant, since its express terms state that it provides coverage throughout the United States, its territories, and Canada.

In its reply brief, however, Triple Crown maintains that Insurance of Pennsylvania's argument is misleading at best. As Triple Crown points out, the Travelers Texas Policy does, in fact, contain express language limiting its geographical coverage, by stating that it "includes the State of Texas only." Triple Crown Service Company's Reply to ICOP's Response to Motion for Partial Summary Judgment ("Plaintiff's Reply"), Docket at 47, p. 5. As Triple Crown explains it:

11

> The [Insurance of Pennsylvania response brief] baldly states on p. 2 that the Texas Travelers Policy "includes the United States of America and *contains no indication that the policy is limited geographically.*" . . . That is not a true statement. The "Ratings Comments" endorsement in the Travelers Texas Policy specifically modifies the Composite Endorsement in that policy by stating that "COMPOSITE ENDORSEMENT IL T3 02 07 86 INCLUDES THE STATE OF TEXAS ONLY."

Plaintiff's Reply, p. 5 (emphasis in original). In other words, as Triple Crown explains, the Ratings Comments section of the Travelers Texas Policy modifies the more general language in the Composite Endorsement and renders the policy applicable only to claims arising in Texas. *Id.* Triple Crown's quotation of the Ratings Comments portion of the Travelers Texas Policy is correct and accurate. See Plaintiff's Appendix, Attachment 18, Exhibit B-2, p. 3. Triple Crown further explains that the language quoted by Insurance of Pennsylvania--that the policy applies to the "United States of America"–was excerpted from the "Truckers Coverage Form" portion of that policy, which was in turn modified by the Ratings Comment endorsement and the Composite Endorsement. As Triple Crown further explains in its reply brief:

> Composite Endorsement IL T3 02 07 86, entitled "Calculation of Premiums - Composite Rates," in turn explains how the premium for the Travelers Texas Policy was calculated. So, the Ratings Comments endorsement and the Composite Rates endorsement together show that the premium was calculated on the assumption that the policy included the state of Texas only. Furthermore, § 1 of the Composite Rates endorsement specifically modifies the scope of the insurance provided under the policy's coverage part, stating that 'This endorsement modifies Insurance provided under the following Coverage Part(s): Truckers Coverage Form."

Plaintiff's Reply, p. 6. "Therefore," concludes Triple Crown, "the Ratings Comments endorsement and the Composite Endorsement together very specifically modify the Truckers Coverage Form in the Travelers Texas Policy to provide that the policy's coverage 'includes the state of Texas only.'" *Id.* Triple Crown argues that Insurance of Pennsylvania quoted specific

12

language from a portion of the Travelers Texas Policy while ignoring the modifying language contained in the Ratings Comments endorsement and the Composite Endorsement.

Triple Crown's argument on this issue is well taken, given the express language contained in the Travelers Texas Policy.  In most other respects, the Travelers Texas Policy and the Travelers All Other States Policy contain virtually similar coverage provisions, coverage limits, and exclusions.  A marked difference is the phrase "includes the state of Texas only," which appears in the Travelers Texas Policy.[9]  Obviously, this is a very significant difference given the issue before the court.

Triple Crown's argument regarding the interpretation of the express language contained in the Travelers Texas Policy makes logical sense also.  Otherwise, Triple Crown would have had in place, simultaneously, two separate insurance policies providing identical levels of coverage for identical claims.  While nothing would prevent a company from purchasing two such policies, it would make very little economic or practical sense.  If Triple Crown's objective was to purchase an additional amount of insurance coverage, that could be accomplished by purchasing an additional excess policy or by simply paying for a higher limit of primary coverage.

---

[9] The Travelers Texas Policy contains other indicia that it is specific to the state of Texas.  For example, many pages of the policy contain a notation at the bottom that reads "CA T0 25 11 87 (TEXAS)."  See, e.g., Plaintiff's Appendix, Attachment 18, Exhibit B-2, pp. 1, 4, 5, and 6.  Triple Crown does not explain the significance, if any, of this notation, but it does not appear on the Travelers All Other States Policy.  In addition, in that same exhibit, on page 3 (the same page that includes the phrase "includes the state of Texas only," the policy contains further language regarding what will or will not be "filed with the Texas bureau."  There is also reference on that page to the "New Texas Truckers Coverage Form . . . ."  Standing alone these phrases are not terribly revealing.  But again, they are peculiar to the Texas Policy and are distinct from the All Other States Policy, which at the very least lends credibility to Triple Crown's arguments.

13

As stated above, Triple Crown presents an alternative argument in its motion for partial summary judgment--that the "§V.B.8." clauses in the Travelers policies expressly preclude the cumulative coverage Insurance of Pennsylvania claims should apply.  The language in the "§V.B.8." clauses, as quoted previously, is perfectly clear.  The clauses clearly limit the level of coverage Travelers and/or its affiliates will provide to Triple Crown in the event Travelers writes more than one insurance policy for the company.  That is, the clauses clearly and expressly foreclose any argument that the two policies provide cumulative coverage on the Navarro claim.  Insurance of Pennsylvania, however, argues that the §V.B.8 clauses are rendered void or voidable by the MCS-90 Endorsement.

As both parties correctly point out in their briefs, the MCS-90 Endorsement is a creature of federal law.  It was passed by Congress in order to ensure that companies engaged in interstate transport, such as Triple Crown, would maintain adequate financial responsibility in the event their business activities resulted in personal injury to members of the public.  See Defendant's Response, pp. 8-10; Plaintiff's Reply, p. 9.  The MCS-90 Endorsement appears in both Travelers policies, and states, in relevant part, as follows:

> It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency, or bankruptcy of the insured.  However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company.

Plaintiff's Reply, p. 8.[10]  The endorsement, both parties also agree, is required to be included in

---

[10] As stated, the MCS-90 Endorsement appears in both Travelers policies.  See Plaintiff's Appendix, Attachment 17, p. 9 (the All Other States Policy) and Attachment 19, p. 5 (the Texas

liability insurance policies issued to companies involved in the business of interstate commerce and which are regulated by the Interstate Commerce Commission and the Federal Highway Administration, pursuant to Sections 29 and 30 of the Motor Carrier Act of 1980.  See, e.g., *Carolina Casualty Insurance Co. v. E.C. Trucking*, 396 F.3d 837 (7th Cir. 2005).

Insurance of Pennsylvania argues that the MCS-90 Endorsement negates the §V.B.8. clauses of the Travelers policies since those clauses "operate[] to exclude coverage under one of the policies.  Clearly then, the [§V.B.8. clause] is the kind of limitation that the MCS-90 Endorsement is specifically designed to render ineffective."  Defendant's Response, p. 9. Insurance of Pennsylvania then goes on to cite several cases which it claims support its interpretation and argued application of MCS-90.

However, Triple Crown argues that "MCS-90 is specifically designed to *preserve* the effectiveness of terms and limitations such as §V.B.8."  Plaintiff's Reply, p. 8.  First, Triple Crown points out that Insurance of Pennsylvania, when quoting the MCS-90 Endorsement included in the Travelers policies, fails to include the last sentence from that endorsement as quoted above, to wit: "However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company."  Triple Crown argues that this sentence is of primary importance to the interpretation of the MCS-90 Endorsement, since it specifically provides that all terms and conditions of the insurance contract to which it is attached remain in full force and effect. Second, Triple Crown maintains that Insurance of Pennsylvania's interpretation and application of the MCS-90 Endorsement are contrary to Seventh Circuit precedent.  Triple Crown is correct

---

Policy).

15

in pointing out that Insurance of Pennsylvania relies heavily on a Tenth Circuit explanation of MCS-90 contained in *Empire Fire and Marine Insurance Company v. Guaranty National Insurance Co.*, 868 F.2d 357 (10th Cir. 1989). Triple Crown is also correct that this Tenth Circuit opinion adopts an admittedly minority view when interpreting the application of MCS-90. Triple Crown then quotes at length from the Seventh Circuit's holding in *Travelers Insurance Co. v. Transport Insurance Co.*, 787 F.2d 1133 (7th Cir. 1986). Relevant portions of that holding quoted by Triple Crown include the following:

> We join the majority in rejecting the contention [that the provisions of MCS-90 control disputes among parties to insurance policies even if the protection of the general public is not at stake.] The purpose of the federal statute and regulations is to ensure that an ICC carrier has independent financial responsibility to pay for losses sustained by the general public arising out of its trucking operations. . . . We agree with the majority view that "I.C.C. public policy factors are frequently determinative where protection of a member of the public is at stake, but those factors cannot be invoked by another insurance company which contracted to insure a specific risk and which needs no equivalent protection."

Plaintiff's Reply, p. 10 (quoting *Travelers*, 787 F.2d at 1140). Accordingly, Triple Crown argues that Insurance of Pennsylvania cannot invoke MCS-90 "to better its financial position *vis-a-vis* Triple Crown, because the purpose of MCS-90 is to protect the traveling public, not to resolve disputes among the parties to insurance policies as to the meaning of those policies." *Id.*, p. 11.

The court agrees with Triple Crown's position on this issue. The MCS-90 Endorsement was created in order to ensure that members of the public are protected in the event they sustain compensable damages as a result of the activities of a trucking company. The purpose of the regulation is to ensure that trucking companies maintain adequate financial responsibility to pay claims or judgments against them. The purpose of the endorsement is *not* to negate express,

16

unambiguous, and otherwise legitimate provisions included in an insurance contract between an insurer and an insured.  And Insurance of Pennsylvania does not cite any case, including cases from another circuit, that support the application of MCS-90 it urges this court to adopt.  Nor does Insurance of Pennsylvania make a compelling argument for its position that the public policy underlying MCS-90 is somehow undermined by the fact that the two Travelers insurance policies at issue in this case are mutually exclusive with regard to the Navarro claim.  As Triple Crown points out, the plaintiffs in that underlying claim have been compensated and the case was settled.  Consequently, the "public has been protected in this case" and "[t]he outcome of the dispute between Triple Crown and [Insurance of Pennsylvania] will have absolutely no impact on the Navarros" or the general public.  Plaintiff's Reply, p. 11.

The court finds that the express language of the Travelers policies reveals that they do not provide cumulative insurance coverage for the underlying claim in this case.  Even to the extent they could be interpreted, arguably, to provide such cumulative coverage, the language contained in the §V.B.8. clauses of the policies preclude such duplicate coverage.  Finally, contrary to the position taken by Insurance of Pennsylvania, the public policy underlying the federally mandated MCS-90 Endorsement does not render the clear and unambiguous language of those clauses inapplicable or void.

### 2. Motion to Strike.

As stated at the outset of this Order, Insurance of Pennsylvania filed a motion to strike in this case, pursuant to Fed.R.Civ.P. 12(f), and Triple Crown filed a response in opposition to that motion.  Docket at 48 and 50, respectively.  The subject of the motion to strike is footnote number one in Triple Crown's reply brief in support of its motion for partial summary judgment.

Insurance of Pennsylvania argues that the footnote contains impermissible extrinsic evidence that should be stricken and not considered by the court in ruling on the motion for partial summary judgment.  Triple Crown responded that the information contained in that footnote was intended only to be informational and was not submitted as evidence in support of its motion.  Insurance of Pennsylvania's position on this issue may be well taken.  Whether intentional or unintentional, Triple Crown included information in said footnote that appears to be extrinsic and therefore irrelevant to the motion for partial summary judgment.  However, no arguably extrinsic evidence contained in that footnote was considered by the court when analyzing the issues presented by the motion for partial summary judgment, or in arriving at its conclusion on the motion.   Consequently, the motion to strike is rendered moot.

## CONCLUSION

For the reasons set forth herein, the Motion for Partial Summary Judgment filed by Triple Crown Services Company is GRANTED; the Motion to Strike filed by The Insurance Company of the State of Pennsylvania is deemed MOOT.  The court hereby grants summary judgment in favor of Triple Crown, and against Insurance Company of Pennsylvania, on Triple Crown's breach of contract claim, and grants summary judgment in favor of Triple Crown, and against Insurance Company of Pennsylvania, on Insurance Company of Pennsylvania's counterclaim for declaratory judgment and damages.  Triple Crown's bad faith claim, which was not subject to the present motion, remains pending as asserted in the original Complaint.

SO ORDERED.

Date: September 18, 2006.

   /s/   William C. Lee
William C. Lee, Judge

United States District Court